UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>J. INES RUIZ-RIVERA,<br><br>　　　　　　　　　　Defendant. | Case No.: 3:20-mj-20306-AHG<br><br>**ORDER:**<br><br>**(1) DENYING SECOND MOTION TO DISMISS THE COMPLAINT;**<br><br>**(2) DENYING MOTION TO PROHIBIT DEFENDANT'S ARREST AT COURT; and**<br><br>**(3) DENYING MOTION TO STAY PROCEEDINGS**<br><br>**[ECF No. 42]** |

　　　　Before the Court are Defendant J. Ines Ruiz-Rivera's motions: (1) to dismiss the complaint; (2) to prohibit Defendant's unlawful and unconstitutional civil arrest at court; and (3) to stay proceedings if this motion is denied to permit Mr. Ruiz to seek interlocutory review of the denial. ECF No. 42. The Court took the matters raised in the Motion under submission after oral argument on August 4, 2020. ECF No. 49. Having considered the parties' papers and their argument, the Court enters the following Order:

## I. BACKGROUND

Defendant is charged with violating 8 U.S.C. § 1325(a)(1), which provides, in relevant part, that "[a]ny alien who (1) enters or attempts to enter the United States at any time or place other than as designated by immigration officers" is guilty of a misdemeanor. 8 U.S.C. § 1325(a)(1); ECF No. 1. The Government alleges that on February 4, 2020, a United States Customs and Border Protection ("Border Patrol") agent encountered Defendant trying to hide in an area near the Community Center in Jacumba, California, approximately 26 miles east of the Tecate, California Port of Entry and approximately 200 yards north of the United States/Mexico International Boundary. ECF No. 1 at 2. The Government alleges that after being advised of his *Miranda* rights, Defendant agreed to answer questions without an attorney present. *Id.* According to the Government, Defendant stated that he is a citizen of Mexico, and that he entered the United States illegally on February 4, 2020. *Id.*

This is Defendant's second motion to dismiss the Complaint. Defendant filed an initial motion on March 11, 2020, ECF No. 16, which the Court denied on July 30, 2020. ECF No. 44. The Court granted Defendant leave to file the instant motion on July 23, 2020. ECF No. 41. The Court will address the second motion to dismiss before turning to the other motions.

## II. DISCUSSION

### A. Motion to Dismiss

#### 1. Parties' Positions

Defendant argues that the charge should be dismissed because § 1325(a)(1) is "presumptively unconstitutional." Defendant argues that § 1325(a)(1) violates the Equal Protection Clause because, although it is facially neutral, it was enacted with a discriminatory purpose and disparately impacts a disfavored group. ECF No. 42 at 5.

Defendant contends that an analysis of § 1325(a)(1)'s constitutional validity must begin with a review of the legislative history of the Undesirable Aliens Act ("UAA") of 1929. Defendant submitted transcripts from Congressional hearings and the Congressional

| | |
|---|---|
| 1 | Record in the 1920s related to criminalization of illegal entry by aliens and the UAA to |
| 2 | support this motion. *See* ECF No. 42-2. These transcripts show that immigration was seen |
| 3 | at that time as a method to control the racial makeup of American society. ECF No. 42-2 |
| 4 | at 6 ("In our immigration law and practice, deportation is the last line of defense against |
| 5 | contamination of American family stocks by alien hereditary degeneracy."). The hearing |
| 6 | proceedings evidence consideration for basing standards for admission of aliens on "total |
| 7 | numbers, race, family stock, and individual quality," and the use of immigration policies |
| 8 | to "control[] the character of future Americans." *Id.* at 14, 21; *see id.* at 22 ("Immigration |
| 9 | control is the greatest instrument which the Federal Government can use in promoting race |
| 10 | conservation of the Nation."). The Congressional Record reflects an open hostility to |
| 11 | Mexican immigrants based on undeniably racist notions. ECF No. 42-2 at 117–18. |
| 12 | Defendant contends that this legislative history demonstrates that "racism and |
| 13 | eugenics" were a "motivating factor" in the passage of the UAA, ECF No. 42 at 13, and |
| 14 | that § 1325(a)(1) is tethered to this legislative history because, like the UAA, it sets |
| 15 | criminal penalties for illegal entry. Applying the factors set forth in *Village of Arlington* |
| 16 | *Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252 (1977) and using the UAA's |
| 17 | legislative history, Defendant argues that § 1325(a)(1) is presumptively unconstitutional |
| 18 | because it is rooted in the discriminatory intent underlying the UAA. Defendant argues that |
| 19 | reaching back to the UAA's legislative history as a progenitor to § 1325(a)(1) is appropriate |
| 20 | under the Supreme Court's recent opinions in *Ramos v. Louisiana*, 140 S. Ct. 1390 (2020), |
| 21 | and *Espinoza v. Montana Dep't of Revenue*, 140 S. Ct. 2246 (2020). Defendant reads these |
| 22 | opinions to hold that where a predecessor law is tainted with discriminatory intent, |
| 23 | subsequent laws on the same subject matter that are non-discriminatory "do not cleanse the |
| 24 | law of its original taint." ECF No. 42 at 14. Defendant further argues that § 1325(a)(1) also |
| 25 | violates equal protection under *Arlington Heights* because of its disparate impact on |
| 26 | Mexican and Latinx persons. Although current statistics are not available, Defendant points |
| 27 | to historical statistics showing that from 2000 to 2010, between 86% and 97% of people |
| 28 | apprehended by the Border Patrol were Mexican. ECF No. 42 at 15. |

1    Defendant contends that because § 1325(a)(1) has a discriminatory purpose (based
2 on the UAA's legislative history) and a disparate impact, the burden shifts under *Arlington*
3 *Heights* for the Government to refute Defendant's showing, or otherwise demonstrate that
4 *the UAA* would have been enacted without a discriminatory purpose. Defendant moves the
5 Court to set an evidentiary hearing on these issues.

6    The Government disputes that there is an unbroken chain between the UAA's
7 enactment in 1929, and passage of a criminal penalty for attempted illegal entry in
8 § 1325(a)(1). Although Congress made illegal entry a misdemeanor offense in 1929,
9 Congress did not criminalize *attempted* illegal entry until the Immigration Act of 1990. *Id.*
10 at 4. The Government argues that Defendant's claim is non-justiciable because it is based
11 on the legislative history of a different law than the one under which Defendant is charged,
12 since attempted illegal entry was not criminalized in the UAA.

13    The Government further argues that *Arlington Heights* is inapplicable, and
14 Defendant cannot establish an equal protection violation in the first instance, because of
15 Congress' plenary power to regulate immigration. The Government contends that based on
16 this plenary power, the constitutionality of § 1325(a)(1) is subject to a highly deferential
17 standard of review that is limited to consideration of whether it is "facially legitimate and
18 bona fide." ECF No. 46 at 6 (quoting *Kleindienst v. Mandel*, 408 U.S. 753, 769 (1972)).
19 Section 1325(a)(1) satisfies this standard of review because the United States has a
20 legitimate interest in deterring illegal entry, and § 1325(a)(1) serves that interest. ECF
21 No. 46 at 9. The Government also disputes that the high percentage of Mexican and Latinx
22 persons affected by § 1325(a)(1) demonstrates unlawful disparate impact, arguing that
23 those statistics reflect the geographic situation of the border.

24    At the hearing on the motion, Defendant argued that the normal deference accorded
25 to Congress' regulation of immigration does not apply to § 1325(a)(1) because it is a
26 criminal law, not a civil deportation statute. The Court invited the parties to submit
27 additional case law in support of that contention. The parties did so, and their supplemental
28 briefs were considered by the Court in its determination of the motion.

## 2. Application of *Arlington Heights* and the Legislative History of the UAA

Defendant's claim that § 1325(a)(1) is "presumptively unconstitutional" rests on the Supreme Court's opinion in *Arlington Heights*. In *Arlington Heights*, the Supreme Court examined a challenge to a local agency's denial of a rezoning request. 429 U.S. at 254. The Court set forth factors to be considered in determining whether there is a discriminatory purpose underlying government action. *Id.* at 266. These factors include "the impact of the official action," the "historical background" of the decision, the "specific sequence of events leading up to the challenged decision," and whether the decision reflects a departure "from the normal procedural [or substantive] sequence." *Id.* at 266–67.

Defendant's *Arlington Heights* analysis of § 1325(a)(1) is fatally flawed, however, because it relies entirely on the legislative history of the UAA, a law that was enacted decades before. The Government correctly points out two key subsequent enactments whose legislative history Defendant has completely ignored: the Immigration and Nationality Act of 1952, and the Immigration Act of 1990.[1]

Defendant's sole reliance on the legislative history of the UAA is based on two recent Supreme Court cases: *Ramos* and *Espinoza*. In *Ramos*, the issue before the Court was whether state laws allowing non-unanimous jury verdicts in criminal trials were constitutional. 140 S. Ct. at 1392. The Court held that the Sixth Amendment right to a jury trial "requires a unanimous verdict to convict a defendant of a serious offense." *Id.* at 1394. The Court noted at the outset that the state laws at issue were rooted in racism, although its holding was based primarily on an analysis of common law rights to a unanimous jury. *Id.*

---

[1] The Government argues that Defendant's tethering of the attempted illegal entry statute to legislative history of statutes that did not criminalize attempted illegal entry makes this issue non-justiciable because it asks the Court "to adjudicate the constitutionality of a crime which is not even charged." ECF No. 46 at 5. The Court disagrees. The Court's analysis is confined to the constitutionality of § 1325(a)(1), the charging statute in this case, under the arguments presented by Defendant.

In his dissent, Justice Alito disagreed with any reference to the laws' discriminatory origins, stating that the reasons why the laws were originally adopted were not relevant to the question of their constitutionality, particularly since they were later reenacted for ostensibly non-discriminatory reasons. *Id.* at 1426 (Alito, J., dissenting). In response, the majority explained that consideration of the reasons for adoption of the state laws at issue was part of the Court's "functional analysis" required by the Sixth Amendment. *Id.* at 1401 n.44. The majority confirmed that the state laws at issue would be unconstitutional even if enacted for solely benign reasons. *Id.*

Several weeks later, the Court issued its opinion in *Espinoza*. There, the Court held that a government program that provided tuition assistance to private schools, but expressly excluded religious schools, violated the Free Exercise Clause of the Constitution. *Espinoza*, 140 S. Ct. at 2261. In a concurring opinion that was not joined by any other justices, Justice Alito argued that *Ramos* set a precedent that requires the Court to examine the original motivation behind the exclusion of religious schools from the program, which was based on anti-Catholic sentiment. *Id.* at 2271 (Alito, J., concurring). Justice Sotomayor was the only justice to address Justice Alito's argument regarding the precedent of *Ramos*. In her dissent, she noted that even a law with an "uncomfortable past" is not automatically invalidated by its discriminatory origins. *Id.* at 2294 n.2 (Sotomayor, J., dissenting).

These cases do not support Defendant's contention that "*Ramos* and *Espinoza* confirm that not only do courts examine the racial motivations of a law at the time of its passage, later reenactments do not cleanse the law of its original taint." ECF No. 42 at 14. That faulty premise underlies Defendant's entire motion. There is no support for Defendant's suggestion that § 1325(a)(1) should be judged according to the legislative history of the UAA, and Defendant has not attempted to argue that § 1325(a)(1) would be unconstitutional under an *Arlington Heights* analysis of relevant legislative history. Defendant's argument that § 1325(a)(1) is "presumptively unconstitutional" under *Arlington Heights* fails.

//

### 3. Equal Protection Challenge

At the hearing on the motions, Defendant shifted tack and argued in the alternative that § 1325(a)(1) is unconstitutional because it cannot survive strict scrutiny analysis under the Equal Protection Clause. In his supplemental briefing, Defendant argued that because he is challenging his treatment by prosecutors and judges in a criminal case, rather than a civil immigration law, the normal deference to Congressional authority over immigration matters does not apply. ECF No. 58 at 2. But that argument is inconsistent with Defendant's motion, which specifically challenges § 1325(a)(1) itself as being "presumptively unconstitutional." ECF No. 42 at 3. Defendant's first motion to dismiss challenged the procedural aspects of his prosecution, i.e., his treatment by prosecutors and judges. The Court denied that motion after a full analysis of the due process afforded to Defendant, including appointment of counsel, consideration of bail, and a trial. ECF No. 44.

Defendant's attempt to avoid the deference to Congressional authority over immigration matters to force a strict scrutiny analysis of § 1325(a)(1) is without merit. The case law cited by Defendant to support this argument does not move the needle. These cases stand for the proposition that criminal prosecution of immigration crimes is subject to constitutional limitations. *E.g., Wong Wing v. United States*, 163 U.S. 228, 237 (1896) (holding that laws that punish illegal immigrants "must provide for a judicial trial to establish the guilt of the accused). That is axiomatic. But none of these cases hold that a different standard of equal protection review applies to laws that are criminal versus civil in nature, or to challenges that are procedural versus substantive, as Defendant argues. Other authority from the Ninth Circuit demonstrates that rational basis review governs any equal protection analysis of § 1325(a)(1).

In *United States v. Hernandez-Guerrero*, 147 F.3d 1075 (9th Cir. 1998), the Ninth Circuit addressed congressional power to pass criminal statutes regulating immigration. The defendant there challenged congressional authority to enact 8 U.S.C. § 1326, a related statute to § 1325(a)(1) that makes illegal entry and presence a felony. The court rejected this contention, holding that "Congress possessed ample authority to enact § 1326 pursuant

to its inherent immigration power, … ." *Hernandez-Guerrero*, 147 F.3d at 1078. The court further held that because the clear purpose of § 1326 "'is to deter aliens who have been forced to leave the United States from reentering the United States,' … § 1326 is well within the ambit of Congress's sweeping power over immigration matters." *Id.* (quoting *United States v. Cooke*, 850 F. Supp. 302, 306 (E.D. Pa. 1994).

In *United States v. Lopez-Flores*, 63 F.3d 1468, 1470 (9th Cir. 1995), the Ninth Circuit addressed an equal protection challenge to the Hostage Taking Act, 18 U.S.C. § 1203, which classifies offenders and victims based on alienage. The appellants argued that the Act violated the Equal Protection Clause because of this classification. *Id.* The Ninth Circuit held that "[f]ederal legislation that classifies on the basis of alienage, enacted pursuant to Congress' immigration *or* foreign powers, is therefore subject to the lowest level of judicial review." *Id.* at 1475 (emphasis in original); *see also United States v. Ruiz-Chairez*, 493 F.3d 1089, 1091 (9th Cir. 2007) (applying rational basis review to sentencing guidelines that provide enhanced punishment for illegal immigrants).

Section 1325(a)(1) readily satisfies the rational basis test. The Ninth Circuit has already found that a similar felony statute, 8 U.S.C. § 1326, satisfies rational basis because it "'is a regulatory statute enacted to assist in the control of unlawful immigration by aliens.'" *Hernandez-Guerrero*, 147 F.3d at 1078 (quoting *Pena-Cabanillas v. United States*, 394 F.2d 785, 788 (9th Cir. 1968)). Section 1325(a)(1) serves the same purpose of deterring illegal immigration. Any disparate impact of § 1325(a)(1) on Mexicans and Latinx persons is more readily explained by the geographic proximity of the border to Mexico and Latin America than by racial animus. *See Dep't. of Homeland Security v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1915–16 (2020) (plurality). In any event, disparate impact alone, absent some further evidence of discriminatory intent, would not be sufficient to demonstrate an equal protection violation. *Washington v. Davis*, 426 U.S. 229, 242 (1976).

Defendant's motion to dismiss on equal protection grounds is **DENIED**.

### B. Motion to Prohibit Defendant's Unlawful and Unconstitutional Civil Arrest at Court

Defendant moves the Court to prohibit U.S. Immigration and Customs Enforcement ("ICE") from arresting him in the courthouse when he appears for trial. Specifically, Defendant asks the Court to invoke its "broad supervisory powers" to "order the Government not to civilly arrest Mr. Ruiz coming to or going from his court appearance." ECF No. 42 at 19. This is a request for an injunction. *See Nken v. Holder*, 129 S. Ct. 1749, 1757 (2009) (an injunction is "a means by which a court tells someone what to do or not to do"). As a magistrate judge, the undersigned's authority is constrained by 28 U.S.C. § 636(b)(1)(A), which expressly excludes the issuance of injunctions from magistrate judges' authority. *See also Teczon-Marin v. Dembin*, Case No. 3:20-cv-01493-LAB, ECF No. 8.

Beyond the insurmountable issue of this Court's lack of authority, this issue is not ripe for determination at this juncture. "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agricultural Prods. Co.*, 473 U.S. 568, 580–81 (1985)). There is no certainty that ICE will attempt to arrest Defendant in the courtroom or courthouse at his trial. ICE is not required to arrest Defendant there, and the outcome of the trial, including any potential custodial sentence for Defendant, is undetermined.

This case is also in a markedly different posture than the cases relied on by Defendant such as *Ryan v. U.S. Immigration & Customs Enforcement*, 382 F. Supp. 3d 142 (D. Mass 2019) and *New York v. U.S. Immigration & Customs Enforcement*, 431 F. Supp. 3d 377 (S.D.N.Y. 2019). In those cases, ICE was a party to the action. Here, Defendant asks the Court to enjoin ICE even though it is not a party to this action. This is further reason to deny the relief requested.

Defendant's motion to prohibit his arrest in court is therefore **DENIED**.

//

### C. Motion to Stay Proceedings

Defendant moves the Court to stay the proceedings to allow him to file an interlocutory appeal if the Court denies his motion to prohibit his arrest at court. The Government opposes.

In determining whether a stay is appropriate, a court must consider the likelihood of success on the merits, irreparable injury to the defendant or others involved in the proceeding, and the public interest. *Leiva-Perez v. Holder*, 640 F.3d 962, 964 (9th Cir. 2016). Here, the Court finds that these factors weigh against a stay. This is primarily because there is no likelihood of success on the merits of Defendant's motion to prohibit his arrest. As noted above, a magistrate judge has no authority to grant such a request, the issue is not ripe for determination in any event, and the requested order is directed at a non-party. The irreparable injury factor also weighs against a stay. Defendant makes no argument that he cannot present a full defense to the charge because he is in fear of arrest inside the courthouse. Defendant's arrest following trial is likely an inevitability if he has no grounds for remaining in the United States legally, and the requested order would not change that circumstance. Finally, the Court does not discern a particular public interest in the delay of Defendant's trial, particularly given the other factors to be considered for issuing a stay.

Defendant's motion for a stay pending interlocutory appeal is therefore **DENIED**.

### III. CONCLUSION

For the reasons set forth above, the Court **DENIES** Defendant's motions.

**IT IS SO ORDERED.**

Dated: September 2, 2020

_____
Honorable Allison H. Goddard
United States Magistrate Judge