**Alison M. Clark, OSB No. 080579**
**Assistant Federal Public Defender**
**Email: alison_clark@fd.org**
**Elizabeth G. Daily, OSB No. 111758**
**Assistant Federal Public Defender**
**Email: liz_daily@fd.org**
**101 SW Main Street, Suite 1700**
**Portland, OR  97204**
**Tel: (503) 326-2123**
**Fax: (503) 326-5524**
**Attorneys for Defendant**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | Case No. 3:19-cr-00407-SI |
| Plaintiff, | |
| v. | **DEFENDANT'S RESPONSE TO GOVERNMENT'S NOTICES OF SUPPLEMENTAL AUTHORITY** |
| **AGUSTIN MACHIC-XIAP,** | |
| Defendant. | |

The defendant, Agustin Machic-Xiap, through counsel, responds to the supplemental authority cited by the government in its two recently filed notices.

**Response to Government's First Notice of Supplemental Authority**

The government's first supplemental authority (ECF 37) cites seven non-precedential district court opinions denying equal protection challenges similar to the one raised here. However, for several reasons, the cases offer scant support for the government's position.

**Page 1   DEFENDANT'S RESPONSE TO GOVERNMENT'S NOTICES OF SUPPLEMENTAL AUTHORITY**

First, in two of those cases, the judges issued oral rulings, but the transcript is not publicly available, nor has it been provided. *See United States v. Navarrete-Castro*, 3:19-CR-2717-CAB, Dkt No. 70 (S.D. Cal Nov. 19, 2020); *United States v. Rodrigues-Barios*, 3:20-CR-1684-LAB, Dkt. No. 33 (S.D. Cal. Oct. 21, 2020). Accordingly, the basis for those opinions is not established, and they offer no persuasive value.

Of the remaining cases, four addressed a different statute—attempted unlawful entry under 8 U.S.C. § 1325(a)(1)—with a distinguishable legislative history. *See United States v. Gallegos-Aparicio*, No. 19-CR-2637-GPC, 2020 WL 7318124 (S.D. Cal. Dec. 11, 2020); *United States v. Rios-Montano*, No. 19-CR-2123-GPC, 2020 WL 7226441 (S.D. Cal. Dec. 8, 2020); *United States v. Lazcano-Neria*, No. 3:20-MJ-04538-AHG, 2020 WL 6363685 (S.D. Cal. Oct. 29, 2020); *United States v. Lucas-Hernandez*, No. 19MJ24522-LL, 2020 WL 6161150 (S.D. Cal. Oct. 21, 2020). The difference is important because, as Judge Curiel remarked in *Rios-Montano*, "[t]he crux of the *Arlington Heights* intent test is to discern the motive of the government officials that engaged in the challenged action[.]" 2020 WL 7226441 at *5. The "challenged action" in each of those cases was "the decision to criminalize" attempted unlawful entry, which first occurred in 1990, not 1929. Before 1990, a defendant "could not have been charged with attempted unlawful entry." *Rios-Montano*, 2020 WL 7226441, at *3 n.2. Due to this distinguishing factor, the courts in each of those four cases focused on the 1990 legislative enactment. The considerable evidence of 1929 racism was relevant only as historical background, far removed in time. Each of the courts found insufficient evidence that racial animus motivated the 1990 criminalization of attempted unlawful entry.

Only the seventh case, *United States v. Medina Zepeda*, 2:20-CR-0057-FMO, ECF No. 33 (C.D. Cal Jan. 5, 2021), involved the same crime at issue here—illegal reentry. However, in that case, the judge summarily found that the *Arlington Heights* analysis should focus on the Immigration and Nationality Act of 1952, which first codified § 1326. The court offered no justification for ignoring the law that first criminalized illegal reentry, the Undesirable Alien Act of 1929. Nor does it appear that the Court held an evidentiary hearing to consider whether racial animus motivated the 1952 continuation of that crime under a different code provision. For those reasons, *Medina Zepeda* offers little guidance here.[1]

Importantly, each of the cases cited by the government with available opinions adopted the *Arlington Heights* framework as establishing the correct disparate intent/disparate impact test for a presumptive violation of the Equal Protection Clause. None of the cases afforded criminal immigration laws deference under the plenary power doctrine, nor did they permit a rational basis standard of review for a law motivated by racial animus. Moreover, none of the cases disputed the inference that racial animus motivated the Undesirable Aliens Act of 1929. If this Court agrees with those positions, then the issue in this case narrows to determining which "challenged action" is at issue.

The Court should hold that the "challenged action" under *Arlington Heights* is the original criminalization of illegal reentry in the Undesirable Aliens Act of 1929. As a matter of statutory interpretation, the recodification of that crime in 1952 under a new statutory subsection is merely

---

[1] The court added the following language to its opinion: "This Order is not intended for publication. Nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis."

Page 3   DEFENDANT'S RESPONSE TO GOVERNMENT'S NOTICES OF SUPPLEMENTAL AUTHORITY

"amendatory." *Sutherland Statutory Construction* § 22:1 (7th ed.) ("[A]ny change of the scope or effect of an existing statute, by addition, omission, or substitution of provisions, which does not wholly terminate its existence, whether by an act purporting to amend, repeal, revise, or supplement, or by an act independent and original in form, is treated as amendatory."). The crime was carried forward with only slight changes to its material elements, as demonstrated in this side-by-side comparison:

| Pre-1952, 8 U.S.C. § 180(a) | 1952 to 1988, 8 U.S.C. § 1326 |
|---|---|
| **Reentry or attempted reentry of deported alien**; . . . . | **Reentry of deported alien** |
| (a) If any alien has been <u>arrested and deported</u> in pursuance of law, . . . and if he <u>enters or attempts to enter the United States</u> after the expiration of sixty days after said date, he shall be guilty of a felony and upon conviction thereof shall, unless a different penalty is otherwise expressly provided by law, be punished by imprisonment for not more than two years or by a fine of not more than $1,000, or by both such fine and imprisonment . . . .. | Any alien who- <br> (1) has been <u>arrested and deported or excluded and deported</u>, and thereafter <br> (2) <u>enters, attempts to enter, or is at any time found in</u>, the United States, . . . ., <br> shall be guilty of a felony, and upon conviction thereof, be punished by imprisonment of not more than two years, or by a fine of not more than $1,000, or both. |

This is the precise situation discussed in *Bear Lake & River Waterworks & Irrigation Co. v. Garland*: regardless of "a formal repeal," when two similar provisions are continually in force, "the new act should be construed as a continuation of the old[.]" 164 U.S. 1, 11-12 (1896).

If the intent of each subsequent Congress to keep or amend an existing criminal law must be examined afresh, then racial animus would be permitted to creep forward in time as a matter of inertia. No precedent supports that weakened interpretation of the Equal Protection Clause. *See, e.g.*, *Pena-Rodriguez v. Colorado*, 137 S. Ct. 855, 868 (2017) ("[Racism is] a familiar and recurring evil that, if left unaddressed, would risk systemic injury to the administration of justice."); *United States v. Fordice*, 505 U.S. 717, 728 (1992) (explaining state's obligation to

Page 4   DEFENDANT'S RESPONSE TO GOVERNMENT'S NOTICES OF SUPPLEMENTAL AUTHORITY

"eradicate[] policies and practices traceable to" systems or racial segregation). Congress must affirmatively legislate for race-neutral reasons.

Unlike in *Rios-Montano*, Mr. Machic-Xiap's crime was not newly created in 1952: he could be charged with unlawful reentry after deportation in 1929 just as easily as he could in 2019. Therefore, if the Court finds that the initial criminalization of illegal reentry in the 1929 Act was motivated in part by racial animus and has had a racially disparate impact, then Mr. Machic-Xiap has met his initial burden to prove presumptive unconstitutionality under *Arlington Heights*, and the burden then shifts to the government to establish that § 1326 would have been enacted absent the racial animus. The 1952 legislative record is relevant, if at all, only as to that purpose, and it cannot satisfy the government's burden.

But, even if the Court were to consider the recodification of § 1326 in 1952 to be the challenged action, the end result should remain the same. As Mr. Machic-Xiap set out in his Reply (ECF 35), and as will be further established at the upcoming evidentiary hearing, the *Arlington Heights* factors firmly establish that racial animus against Mexicans and other Latinx immigrants remained a motivating factor for the continuation of illegal reentry as a crime in 1952, and the law continues to have disparate impact to this day.

**Response to Government's Second Notice of Supplemental Authorities**

In its second notice of supplemental authorities (ECF 40), the government cited three published equal protection cases from various circuits, without explaining their relevance. Two of those cases have nothing to do with any issue in this case, and one involved a distinguishable legislative history issue.

...

In *Boardman v. Inslee*, the Ninth Circuit addressed a non-race-based equal protection claim under rational basis review. 978 F.3d 1092, 1117-1119 (9th Cir. 2020). The court reiterated "where the affected parties are not members of a 'traditionally suspect class,'" rational basis review applies. *Id.* at 1119. The case is not relevant here, where the challenged classification is based on race.

In *Thai Meditation Ass'n of Alabama, Inc. v. City of Mobile, Alabama*, the Eleventh Circuit addressed a claim of religious discrimination in a city zoning decision. 980 F.3d 821, 834-837 (11th Cir. 2020). The court deferred to the district court's bench trial finding of no proven discriminatory intent because, although city residents had expressed anti-Buddhist sentiment, no government decisionmaker had done so. *Id.* at 836. The case is not relevant here given the ample evidence of anti-Mexican sentiment by numerous decisionmakers in both 1929 and 1952.

Finally, in *N. Carolina State Conference of the NAACP v. Raymond*, the Fourth Circuit considered the application of *Arlington Heights* when a law is struck down for prior discrimination and then reenacted. 981 F.3d 295, 303 (4th Cir. 2020). The court confirmed that the *Arlington Heights* burden to prove discriminatory intent requires the challengers to establish that the new law was enacted with a discriminatory purpose. *Id.* The earlier discrimination remains relevant, but it does not adhere automatically to the later decisionmakers. *Id.* at 305. *Raymond* presents the opposite scenario from the present case because the original law here—the Undesirable Aliens Act of 1929—was never struck down but merely continued in the same basic form. And none of the conditions that led the court in *Raymond* to find a break from past discrimination—like added provisions intended to reduce disparate impact—are present here.

In this case, the Undesirable Aliens Act of 1929 criminalized illegal reentry at least in part out of racial animus toward Mexicans. In the ensuing decades, Congress has silently carried the law forward in the same basic form in which it was originally enacted, without looking back to consider or remedy the law's prejudiced origins. And throughout that time, the law has accomplished its goal of disparately impacting Mexicans and other racially-identified Latinx immigrants. Under *Arlington Heights*, § 1326 is presumptively unconstitutional, and the government cannot meet its burden to prove that the same law would have been enacted absent the impermissible motive.

Respectfully submitted this 26th day of January, 2021.

*/s/ Elizabeth G. Daily*
Elizabeth G. Daily

*/s/ Alison M. Clark*
Alison M. Clark
Attorneys for Defendant