Michael T. Light, Ph.D.
Associate Professor of Sociology
University of Wisconsin-Madison

*Purpose*

Upon request from the Federal Public Defender for the District of Oregon, I undertook an examination of statistical disparities pertaining to illegal re-entry cases in the sentencing data from the United States Sentencing Commission. Specifically, I was asked to examine the demographic composition of illegal re-entry defendants and the statistical features of how these defendants fare at sentencing compared to other offenders and offense types.

*Expertise*

Professor Light teaches courses on criminology and punishment and is a recognized expert in the field of criminal sentencing. He has published extensively using U.S. Sentencing Commission data.[1] This work appears in leading peer-reviewed, social science journals and has been cited in both state (*State of Wisconsin v. Salas Gayton*, 2016, No. 2013AP646–CR) and federal judicial opinions (*United States v. Valdovinos*, 2014, No. 13–4768). Both the National Science Foundation (SES Award # 1849297) and the National Institute of Justice (Award 2019-R2-CX-0058) currently fund his research on sentencing and criminal case processing.

---

[1] *See* Light, Michael T. 2021. "The Declining Significance of Race in Criminal Sentencing: Evidence from U.S. Federal Courts." *Social Forces* https://doi.org/10.1093/sf/soab018; Light, Michael T. and Julia Thomas. 2021. "Undocumented Immigration and Terrorism: Is there a Connection?" *Social Science Research* 94: https://doi.org/10.1016/j.ssresearch.2020.102512; Light, Michael T., Ellen Dinsmore, and Michael Massoglia. 2019. "How do Criminal Courts Respond in Times of Crisis? Evidence from 9/11." *American Journal of Sociology* 125: 485-533.; King, Ryan D. and Michael T. Light. 2019. "Have Racial and Ethnic Disparities in Sentencing Declined? *Crime and Justice: A Review of Research*, edited by Michael Tonry. Chicago: University of Chicago Press; Light, Michael T. 2017. "Punishing the 'Others': Citizenship and State Social Control in the United States and Germany." *European Journal of Sociology* 58: 33-71; Light, Michael T., Michael Massoglia, and Ryan D. King. 2014. "Citizenship and Punishment: The Salience of National Membership in U.S. Criminal Courts." *American Sociological Review* 79: 825-847; Light, Michael T. 2014. "The New Face of Legal Inequality: Noncitizens and the Long-Term Trends in Sentencing Disparities across U.S. District Courts, 1992-2009." *Law & Society Review* 48: 447-478; Ulmer, Jeffery T., Michael T. Light, and John Kramer. 2011. "Racial Disparity in the Wake of the Booker/Fanfan Decision: An Alternative Analysis to the USSC's 2010 Report." *Criminology & Public Policy* 10: 1077-1118; Ulmer, Jeffery T., Michael T. Light, and John Kramer. 2011. "Does Increased Judicial Discretion Lead to Increased Disparity? The "Liberation" of Judicial Sentencing Discretion In the Wake of the Booker/Fanfan Decision." *Justice Quarterly* 28: 799-837; Ulmer, Jeffery T. and Michael T. Light. 2010. "Federal Case Processing and Sentencing Before and After the Booker/Fanfan Decision: Little Has Changed." *Journal of Gender, Race, and Justice* 14:143-178; Ulmer, Jeffery T. and Michael T. Light. 2011. "Beyond Disparity: Changes in Federal Sentencing Post-Booker and Gall." *Federal Sentencing Reporter* 23(5):333-341.

**An Empirical Analysis of § 2L1.2 Offenses in U.S. Federal Courts**

This memo uses the U.S. Sentencing Commission's (USSC) Standardized Research Files from 2015 to 2019 (the five most recent years of data available) to examine cases sentenced under § 2L1.2 - Unlawfully Entering or Remaining in the United States – of the U.S. Sentencing Guidelines. 2L1.2 cases consist almost entirely of those prosecuted under 8 U.S.C. 1326. Over the last 5 years, 99.4% of 2L1.2 cases had only 1 count of conviction. Of the 2L1.2 cases, 99.2% were 8 U.S.C. 1326 convictions.

2L1.2 cases were the second most numerous offense on the federal docket, behind only § 2D1.1 – Unlawful Manufacturing, Importing, Exporting, or Trafficking Drugs. Throughout this memo, I compare 2L1.2 cases to the other guidelines that comprise the 10 most numerous non-immigration offenses. The guidelines section, definition, and number cases for each offense type are shown in Table 1. Combined, these 10 guidelines make up the overwhelming majority (84.5 percent) of cases sentenced over the past 5 years.

**Table 1. 10 Most Numerous Sentencing Guidelines, 2015-2019**

| Section | Description | Cases |
|---|---|---|
| 2D1.1 | Drugs - Unlawful Manufacturing, Importing, Exporting, or Trafficking | 96,062 |
| 2L1.2 | Unlawfully Entering or Remaining in the United States | 87,841 |
| 2B1.1 | Larceny, Embezzlement, and Other Forms of Theft | 32,975 |
| 2K2.1 | Unlawful Receipt, Possession, or Transportation of Firearms or Ammunition | 32,382 |
| 2B3.1 | Robbery | 8,305 |
| 2G2.2 | Trafficking in Material Involving the Sexual Exploitation of a Minor | 7,328 |
| 2S1.1 | Laundering of Monetary Instruments | 5,353 |
| 2A3.5 | Failure to Register as a Sex Offender | 1,963 |
| 2T1.1 | Tax Evasion | 1,963 |
| 2D1.2 | Drug Offenses Occurring Near Protected Locations or Involving Underage or Pregnant Individuals | 1,706 |

*Notes*: Total number for top 10 guidelines is 275,878, representing 84.5% of all cases between 2015 and 2019 where the guideline section is known.

*Demographic Differences*

The demographic composition of 2L1.2 cases is markedly different than the other guidelines. Looking at Figure 1, 99% of all 2L1.2 cases involve Hispanic defendants. As shown in Table 2, none of the other guidelines have a similarly skewed racial/ethnic make-up.

**Figure 1. Racial/Ethnic Composition of 2L1.2 Cases**

- Other Race 0%
- White 1%
- Black 0%
- Hispanic 99%

■ White  ■ Black  ■ Hispanic  ■ Other Race

**Table 2. Racial/Ethnic Composition by Sentencing Guideline**

| Section | White | Black | Hispanic | Other Race |
|---------|-------|-------|----------|------------|
| 2D1.1   | 24%   | 25%   | 48%      | 3%         |
| 2L1.2   | 1%    | 1%    | 99%      | 0%         |
| 2B1.1   | 44%   | 32%   | 18%      | 7%         |
| 2K2.1   | 26%   | 51%   | 19%      | 3%         |
| 2B3.1   | 24%   | 58%   | 15%      | 3%         |
| 2G2.2   | 81%   | 4%    | 12%      | 3%         |
| 2S1.1   | 37%   | 20%   | 36%      | 7%         |
| 2A3.5   | 45%   | 26%   | 11%      | 17%        |
| 2T1.1   | 64%   | 19%   | 10%      | 7%         |
| 2D1.2   | 9%    | 23%   | 66%      | 2%         |

*Likelihood of a Trial*

Although trials in federal court are generally rare, they are virtually non-existent among 2L1.2 cases. As shown in Figure 2, of the nearly 88,000 2L1.2 cases sentenced over the last 5 years, less than 0.3% of them were convicted by trial. The only other offense that even comes close to such a small number of trials are 2A3.5 cases, "Failure to Register as a Sex Offender." Still, even at a 1% trial rate, this means that 2A3.5 cases are over three times more likely to go to trial than 2L1.2 cases.

**Figure 2. Percent of Cases Convicted at Trial by Sentencing Guideline, 2015-2019**

| Guideline | Percent |
|---|---|
| 2D1.1 | 2.5% |
| 2L1.2 | 0.3% |
| 2B1.1 | 5.0% |
| 2K2.1 | 3.5% |
| 2B3.1 | 5.8% |
| 2G2.2 | 3.3% |
| 2S1.1 | 8.2% |
| 2A3.5 | 1.0% |
| 2T1.1 | 7.7% |
| 2D1.2 | 3.0% |

*Likelihood of Incarceration*

2L1.2 cases are among the guidelines most likely to result in incarceration. As shown in Figure 3, 97% of 2L1.2 cases result in a prison sanction, a higher proportion than Drug Trafficking (2D1.1), Larceny (2B1.1), Money Laundering (2S1.1), Tax Evasion (2T1.1), and even Firearms offenses (2K2.1).

4



Figure 3. Percent of Cases Sentenced to Prison by Sentencing Guideline, 2015-2019

*Severity of Cases*

The comparatively high rate of incarceration for 2L1.2 offenses could be a result of the severity of cases. I examine this possibility in two ways. First, I examine the average final offense level (ranging from 1-43) for each guideline. As shown in Figure 4, 2L1.2 cases are in fact the least severe among the top 10 most numerous sentencing guidelines. The juxtaposition between 2L1.2 cases, drug trafficking and money laundering is illuminating. The average offense level for both drug trafficking (2D1.1) and money laundering (2S1.1) cases is roughly 2.5 times the average offense level for 2L1.2 cases. Yet, 2L1.2 cases are more likely to result in a prison sanction.

The second approach is to examine the average statutorily required minimum sentence based on all counts of conviction. These results are shown in Figure 5. There is considerable variation across these different offenses, ranging from 68 months for 2D1.2 cases (Drug Offenses Occurring Near Protected Locations or Involving Underage or Pregnant Individuals) to virtually no required imprisonment. Important for this memo, the statutory minimum sentence is lowest for 2L1.2 cases, at 0.01 months on average. Combined, the results in Figures 3-5 suggest that 2L1.2 offenders are among the most likely to receive a prison sentence despite having the lowest mandatory minimums and final offense levels.



**Figure 4. Average Final Offense Level by Sentencing Guideline, 2015-2019**



**Figure 5. Average Statutory Minimum Sentence by Sentencing Guideline, 2015-2019**

*Do 2L1.2 Cases Predict Incarceration net of Offense Severity, Criminal History, and Mandatory Minimums?*

The results thus far provide suggestive evidence that 2L1.2 cases are punished uniquely in U.S. federal courts. However, one would need to account for other relevant sentencing factors before drawing strong conclusions. I thus turn to multivariate regression analysis to examine the influence of 2L1.2 cases on sentencing outcomes. As the U.S. Sentencing Commission notes, "the goal of multivariate regression analysis is to determine whether there is an association between the factors being studied and, if so, to measure the extent to which each factor contributes to the observed outcome…The principal benefit of multivariate regression analysis is that it controls for the effect of each factor in the analysis by comparing offenders who are similar to one another in relevant ways" (USSC 2017: 3).[2]

In this analysis, I compare the likelihoods of receiving a prison sentence among different guidelines, controlling for the three most important determinants of sentencing in U.S. federal courts: the final offense level (ranging 1-43), the final criminal history category (ranging from 1-6), and the statutory minimum penalty based on all counts of conviction (measured in months). I use a linear probability model to examine the likelihood of incarceration. For illustrative purposes, in Figure 6 I show the predicted probability of prison for each guideline holding all variables constant at their means. In other words, the results in the figure show the likelihood of incarceration for offenders sentenced under different guidelines but with the same offense severity, the same criminal history, and the same statutory minimum (the full regression results are shown in Appendix Table 1).

The results in Figure 6 make clear that the sentencing differences observed above are not driven by statutory minimums, offense severity, or criminal history. When these three factors are held constant at their means, 2L1.2 offenders are effectively guaranteed to receive a prison sentence (the predicted probability is 1). Save for 2A3.5 cases (Failure to Register as a Sex Offender), the likelihood of incarceration is higher among 2L1.2 offenders than all other guidelines in the study. Indeed, none of the other offenses have a predicted probability above 95%, including drug trafficking, sexual exploitation of a minor, robbery, money laundering, or firearms offenses.

---

[2] *See* U.S. Sentencing Commission. 2017. "Demographic Differences in Sentencing: An Update to the 2012 Booker Report." Available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171114_Demographics.pdf.



**Figure 6. Predicted Probability of Incarceration by Sentencing Guideline, 2015-2019**

*Do 2L1.2 Cases Help Explain Sentencing Disparities between White and Hispanic Defendants?*

The results thus far reach two general conclusions: (a) 2L1.2 cases disproportionately involve Hispanic defendants and (b) 2L1.2 cases are significantly more likely to result in a prison sentence compared to similarly situated non-2L1.2 offenders. Combining these insights, this next analysis examines how much of the sentencing difference between white and Hispanic offenders in U.S. federal courts is attributable to 2L1.2 cases. I do this by conducting a multivariate analysis where the dependent variable is the likelihood of incarceration. Here again, I use a linear probability model and calculate predicted probabilities of prison by race after controlling for the final offense level, the final criminal history category, and the statutory minimum penalty. These results are shown in two models in Figure 7 (full regression results are shown in Appendix Table 2). The first shows the predicted probability of incarceration for white and Hispanic offenders without accounting for the guideline offense. In this model, I observe a 13.5-percentage point gap, favoring white offenders. The second model adds an indicator for 2L1.2 cases to the explanatory variables. With this inclusion, the relative incarceration gap between white and Hispanic offenders decreases substantially, down to an 8-percentage point gap. In other words, adjusting for the punitive sanctions 2L1.2 offenders receive decreases the amount of Hispanic-white disparity in federal sentences by roughly 40 percent (1 - [8.1 / 13.5] = .4).

8

**Figure 7. Predicted Probabilities of Incarceration for White and Hispanic Defendants**



*Notes*: Both models include controls for final offense level, criminal history category, and the statutory minimum penalty.

*Summary*

Using U.S. Sentencing Commission data from 2015 to 2019, this analysis examined the key sentencing features involving cases sentenced under § 2L1.2 - Unlawfully Entering or Remaining in the United States. The data reveal several notable findings, summarized as follows:

- 99% of all 2L1.2 cases involve Hispanic defendants. Such large demographic disparities are observed for no other guideline among the 10 most numerous non-immigration offense types.
- 2L1.2 cases are the least likely to be convicted at trial.
- Despite having the lowest statutory minimums and offense levels, 2L1.2 cases are among the most likely to receive a prison sentence (97%).
- Accounting for previous criminal history, offense severity, and the statutory minimum sentence, 2L1.2 offenders are still substantially more likely to be incarcerated.
- The differential punishment of 2L1.2 cases explains roughly 40% of the observed sentencing differences between white and Hispanic defendants, net of controls for offense severity, criminal history, and mandatory minimums. Put differently, 2L1.2 offenses contribute significantly to the differential likelihood that white and Hispanic offenders are sentenced to incarceration in U.S. Federal Courts.

**Appendix**

**Appendix Table 1. Linear Probability of Incarceration, 2015-2019**

| Measures | b | se | |
|---|---|---|---|
| *Offense Type* | | | |
| 2D1.1 (reference) | -- | -- | |
| 2L1.2 | 0.14 | (0.00) | *** |
| 2B1.1 | -0.15 | (0.00) | *** |
| 2K2.1 | 0.02 | (0.00) | *** |
| 2B3.1 | 0.02 | (0.00) | *** |
| 2G2.2 | -0.01 | (0.00) | *** |
| 2S1.1 | -0.06 | (0.00) | *** |
| 2D1.2 | 0.04 | (0.01) | *** |
| 2T1.1 | -0.23 | (0.01) | *** |
| 2A3.5 | 0.10 | (0.01) | *** |
| | | | |
| Final Offense Level | 0.01 | (0.00) | *** |
| Criminal History Category | 0.01 | (0.00) | *** |
| Statutory Minimum | 0.00 | (0.00) | *** |
| Constant | 0.70 | (0.00) | *** |
| N | 275,695 | | |

*Notes*: *** $p < .001$

**Appendix Table 2. Linear Probability of Incarceration by Ethnicity, 2015-2019**

| | Model 1 - No Offense Controls | | | Model 2 - Controlling for 2L1.2 | | |
|---|---|---|---|---|---|---|
| Measures | b | se | | b | se | |
| White (reference) | -- | -- | | -- | -- | |
| Hispanic | 0.14 | (0.00) | *** | 0.08 | (0.00) | *** |
| *Offense Type* | | | | | | |
| 2L1.2 | -- | -- | | 0.14 | (0.00) | *** |
| | | | | | | |
| Final Offense Level | 0.01 | (0.00) | *** | 0.01 | (0.00) | *** |
| Criminal History Category | 0.03 | (0.00) | *** | 0.02 | (0.00) | *** |
| Statutory Minimum | 0.00 | (0.00) | | 0.00 | (0.00) | ** |
| Constant | 0.68 | (0.00) | *** | 0.61 | (0.00) | *** |
| $R^2$ | 0.10 | | | 0.138 | | |
| N | 208,292 | | | 208,292 | | |

*Notes*: *** $p < .001$; ** $p < .01$